**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SIGITAS BRINKLYS &
AURELIJA CARUSO,

                Plaintiffs,

v.                                    Case No. 3:14-cv-1211-J-34MCR

ELAINE C. DUKE, Secretary, Department
of Homeland Security, et al.,[1]

                Defendants.
_____/

# O R D E R

**THIS CAUSE** is before the Court on Plaintiffs' Motion to Vacate Judgment (Doc. 33; "Motion"), filed on February 24, 2017. Defendants filed a response on May 9, 2017. See Defendants' Opposition to Plaintiffs' Motion to Vacate Judgment (Doc. 40; "Response"). The Court notes that Plaintiffs filed a motion for leave to file a reply on August 4, 2017—almost three full months after the Government filed the Response. See Plaintiff's Verified Motion for Leave to File a Reply to Government's Response to Motion to Vacate and Incorporated Request to Submit a Reply Brief of No More than Six (6) Pages [sic] (Doc. 42; "Motion for Leave"). Defendants oppose the request. See Defendants' Opposition to Plaintiffs' Motion for Leave to File a Reply Brief (Doc. 43). By the time Plaintiffs filed the Motion for Leave, the Court had already invested substantial

---

[1]      Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Elaine C. Duke is automatically substituted for Jeh Johnson as Secretary of the Department of Homeland Security; Jefferson B. Sessions III is automatically substituted for Eric H. Holder as Attorney General of the United States; James McCament is automatically substituted for Lori Scialabba as Acting Director of Citizenship and Immigration Services; and James McHenry is automatically substituted for Juan P. Osuna as Acting Director of the Executive Office for Immigration Review.

time reviewing the Motion and the Response, had determined its ruling on the Motion, and was working on revising the instant order.  Having reviewed the Motion for Leave, the Court concludes that Plaintiffs have failed to show good cause for their untimely filing.[2] More importantly, the Court's review of the Motion for Leave discloses that the arguments Plaintiffs seek to present would neither be of assistance in resolving the Motion, nor alter the Court's decision.  As such, the Motion for Leave is due to be denied.

## I.    Background

The complete facts of the case are set forth in the Court's Order granting summary judgment in favor of Defendants, (Doc. 28; "Summary Judgment Order"), as well as the Eleventh Circuit's decision affirming the entry of Summary Judgment, see Brinklys v. Sec'y, Dep't of Homeland Sec., ---F. App'x---, No. 16-13215, 2017 WL 3016687 (11th Cir. Jul. 17, 2017) (Doc. 41; "Eleventh Circuit Opinion").  Thus the Court will not repeat the facts in detail here.  Instead the Court includes only those necessary for an understanding of the issues raised in the Motion.[3]

---

[2]    In the Motion for Leave, Plaintiffs explain the delay in part by stating that counsel drafted an email inquiring if Defendants would consent to the filing of a reply brief, but failed to send it until June 30, 2017. See Motion for Leave at 3.  Nothing about the failure to send the e-mail until June 30, 2017, explains or excuses waiting until August 4, 2017, to file the Motion for Leave.  Nor do the statements regarding counsel's busy schedule due to his representation of detained undocumented aliens explain the tardy filing. Notably, a cursory review of this Court's records discloses that during the three months in which Plaintiffs did not file the Motion for Leave, counsel was filing and actively litigating numerous other cases which like the instant case either seek to compel action by the Department of Homeland Security or review of such agency actions but did not deal with seeking the release of undocumented detained individuals. See 6:17-cv-1017-GAP-TBS, 2:17-cv-393-UA-CM, 6:17-cv-1154-GKS-GJK, 6:17-cv-1017-GAP-TBS, 8:17-cv-1201-SDM-MAP, 8:17-cv-890-JDW-AEP.

[3]    The facts recited here are taken from the Summary Judgment Order.  Citations to the record are included only to the extent matters not contained in the Summary Judgment Order are addressed.

Plaintiff Aurelija Caruso[4] and Raimondas Kalinauskas, both natives and citizens of Lithuania, entered the United States on February 10, 2000. Aurelija married United States citizen Frank Caruso on February 21, 2003, and Kalinauskas married United States citizen Luzmaria Martinez on April 22, 2003. On May 19, 2003, Caruso filed form I-130, Petition for Alien Relative ("I-130 Petition"), on Aurelija's behalf. That same day, Martinez filed an I-130 Petition on Kalinauskas's behalf.

On August 22, 2007, before the United States Citizenship and Immigration Service ("USCIS") decided Caruso's I-130 Petition, Aurelija and Caruso divorced, automatically terminating the petition. A little more than two months later, on November 2, 2007, Aurelija married Plaintiff Sigitas Brinklys. Brinklys filed an I-130 Petition on Aurelija's behalf on February 21, 2008, and Aurelija filed form I-485, Application to Register Permanent Residence or Adjust Status ("I-485 Application"), that same day.

On May 23, 2011, USCIS issued a Notice of Intent to Deny Alien Relative Visa Petition ("NOID") indicating that it intended to deny Brinklys's I-130 Petition. The NOID identified information that caused USCIS to "doubt the actual intentions of the marriages used for applying for immigration benefits." USCIS relied heavily on a July 10, 2006, memorandum detailing an investigation of Aurelija and Caruso's marriage by a special agent for U.S. Immigration and Customs Enforcement ("USCIS Memorandum"). Tr. 881-84.

As pertaining to the instant Motion, in the NOID, USCIS described Aurelija and Kalinauskas's history of joint property ownership as well as information regarding

---

[4] The Court refers to Aurelija Caruso as Aurelija to avoid confusion when discussing her and her first U.S.-citizen husband Frank Caruso.

Caruso's lease of an apartment on Bluff Street in Carol Stream, Illinois, a September 15, 2005 DUI arrest,[5] and an interview with Caruso's mother who denied her son was married. The NOID also discussed a police report from February 24, 2005, describing Illinois state law enforcement's interactions with Aurelija and Kalinauskas during a criminal investigation at a residence on Isle Royal Circle in Plainfield, Illinois. Officers interviewed and arrested Kalinauskas. They reported that, during the interview, Kalinauskas identified Aurelija as his girlfriend. The officers also interviewed Aurelija, who reportedly stated that she and Kalinauskas were "good friends"; that she had lived at that address with Kalinauskas since December 2003; that she was married to Caruso but did not live with him because he and Kalinauskas did not get along; that she had known Kalinauskas for about eight years; that they had been in the United States for four to five years; that she did "not contribute any money to anything regarding the household"; that Kalinauskas paid the mortgage, household bills, and payments on three vehicles at the residence; and that she and Kalinauskas were trying to become U.S. citizens.

USCIS also described Aurelija and Caruso's interview on Caruso's I-130 Petition at the Chicago USCIS office on September 13, 2005. At the interview both presented Illinois state identification bearing the address of the Isle Royal Circle property, identified that address as their shared residence, and claimed to have lived there together since December 2003. Tr. 2. Caruso's identification card had been issued three days earlier,

---

[5] The NOID and the subsequently issued USCIS Decision state that Caruso was arrested for a DUI on September 15, 2005. It appears that USCIS misread the USCIS Memorandum, which stated that on September 15, 2005, the ICE agent investigating Aurelija and Caruso's marriage received the report of Caruso's February 13, 2005 arrest for DUI, at which time Caruso said he lived on Bluff Street in Carol Stream, Illinois. Tr. 882. The Board of Immigration Appeals, however, noted the error and identified the correct date in its decision before finding the error to be harmless. Tr. 26 n.4.

on September 10, 2005.  According to the NOID after being confronted with the allegation of marriage fraud "their accompanying attorney advised them not to answer any other questions.  They left the interview."  Id.

On June 16, 2011, Brinklys responded to the NOID.  Tr. 402.  In addition to providing various documents, Brinklys explained that Caruso had obtained the identification listing the Isle Royal Circle address three days before the USCIS interview because his driver's license had been <u>suspended for speeding</u>, and he was informed that he needed current identification for the interview.  Tr. 405.  He argued that, contrary to the assertion in the NOID, Aurelija was not interviewed separately on September 13, 2005, that no one ever informed her and Caruso of a suspicion that the marriage to Caruso was fraudulent, and that only Caruso was interviewed because investigators wanted to determine whether he was involved with Kalinauskas's criminal activity.  Tr. 405, 409.  With regard to the February 24, 2005 Illinois state law enforcement investigation, Brinklys stated that it was "irrelevant and immaterial to the bona fides of the marriage between Caruso and Aurelija," and disputed the description of Kalinauskas and Aurelija's statements.  Tr. 407-08.  Brinklys contended that Kalinauskas had actually told law enforcement that Aurelija was his "female friend."  Tr. 408.  He confirmed that Kalinauskas and Caruso did not get along because of Caruso's drinking and gambling problems and that the men had only met once.  Id.  He stated that Aurelija denied telling the police that she had only known Kalinauskas for eight years, claimed she misunderstood the question, and asserted that she had also told officers that Kalinauskas was her brother.  Tr. 408, 413.  He confirmed that Kalinauskas paid the mortgage and bills at the Isle Royal Circle residence but contended that Aurelija paid for groceries and

transportation costs.  Tr. 408.  He asserted that Aurelija and Caruso had been trying to save money at the time.  Id.  Brinklys also confirmed that Kalinauskas paid for a Ford, a Dodge Ram, and a Mercedes found at the Isle Royal Circle residence on the date of the investigation but that Aurelija and Caruso also owned a 2005 Chrysler 300, a 1997 Ford Crown Victoria, and a 1995 Mercedes.  Tr. 409.

Notably, Brinklys did not dispute the description of the property records set forth in the NOID.  Instead, he explained that Aurelija and Kalinauskas bought the Isle Royal Circle residence together because Caruso could not qualify for financing, as he had recently received a bankruptcy discharge.  Tr. 407, 411, 569–71.  He stated that Aurelija had "no knowledge" that she and Kalinauskas were listed on property records as "husband and wife," and that she never told anyone she was married to Kalinauskas.  Tr. 412.  Brinklys also asserted that the fact that the I-130 Petitions were filed on behalf of Kalinauskas and Aurelija on the same day was "just a coincidence" and also "irrelevant and immaterial."  Tr. 409.

In his response to the NOID and later in his appellate brief to the Board of Immigration Appeals ("BIA"), Brinklys also provided several different explanations for Mrs. Caruso's statements to the ICE agent, as well as explanations for Caruso's December 2004 lease of the Bluff Street apartment without Aurelija as well as his statements on the lease application.

On November 7, 2011, USCIS issued a decision denying Brinklys's I-130 Petition based on its findings that (1) Aurelija had previously entered into a marriage with Caruso for the sole purpose of evading immigration laws, and (2) Brinklys had failed to provide sufficient evidence to establish by a preponderance of the evidence that his marriage to

Aurelija was bona fide. Tr. 10–17 ("USCIS Decision"). The bulk of USCIS's discussion was taken from its NOID, but USCIS also explained its rejection of the additional arguments and evidence Brinklys had submitted.

With respect to the explanation regarding Caruso's recently obtained identification, the USCIS Decision noted that Brinklys failed to provide any evidence "of when and if the license [Caruso] had prior to this new one was ever actually suspended." Tr. 15. Similarly, it noted that there was no objective evidence supporting the explanation for Caruso's December 2004 lease of the Bluff Street apartment, and that the explanations offered were "vague and inconsistent." Id. The USCIS Decision continued to rely on the statements made by Kalinauskas and Aurelija to Illinois state law enforcement on February 24, 2005, and rejected the assertion that it was a mere coincidence that Aurelija's and Kalinauskas's applications for adjustment of status were filed on the same day and prepared by the same person. Id.

Brinklys appealed the USCIS Decision to the BIA on January 5, 2012. Tr. 100–24. He provided an affidavit from Aurelija as well as a significant amount of new evidence. See Tr. 118–19, 121 (listing documents submitted for the first time with appellate brief "as the result of new allegations raised for the first time in the denial notice"). In his brief to the BIA, Brinklys argued that Caruso had presented an Illinois state identification card because his license "was suspended," and disputed that either Caruso or Aurelija were ever told that the validity of their marriage was in doubt. Tr. 107. Again, Brinklys disputed the description of Aurelija and Kalinauskas's February 24, 2005 interaction with Illinois state law enforcement, and provided an affidavit by Aurelija explaining her recollection of

the events. Id. 107-110. Again, Brinklys did not dispute the accuracy of property records, but only noted that USCIS had not produced them. Tr. 112-13.

On September 26, 2013, Brinklys filed a reply brief with the BIA, Tr. 28, in which, amongst other arguments, he disputed the statements attributed to Kalinauskas and Aurelija during the February 24, 2005 interaction with law enforcement and again complained that the police report had never been given to him or Aurelija despite their having requested it at the time of their marriage interview. Tr. 29-30. Indeed he asserted that without the document he and Aurelija could not respond to the statements reported to have been made. Tr. 30-31. He also complained that the USCIS Memorandum and property records had not been produced to them. Id.

On August 26, 2014, the BIA affirmed the USCIS Decision. Tr. 24–27. In doing so, it highlighted some of the USCIS findings relating to its discussion of Aurelija's marriage to Caruso. Specifically, the BIA focused on (1) the fact that Caruso had obtained his identification showing the Isle Royal Circle address three days before the USCIS interview; (2) Aurelija's and Kalinauskas's statements to law enforcement on February 24, 2005; (3) the property records relating to the Isle Royal Circle and Arapahoe Court properties; (4) Mrs. Caruso's statements during the interview with ICE agents; and (5) the evidence relating to Caruso's Bluff Street apartment lease. Tr. 25–26. Notably the BIA recognized that USCIS had referred to Caruso's identification as a driver's license incorrectly. The BIA also noted that, while in the NOID and the USCIS Decision USCIS mistakenly stated that Caruso had been arrested for DUI on September 15, 2005, the

police records showed that the arrest had actually occurred on February 13, 2005.[6]  Tr. 26.  The BIA specifically concluded that the error was harmless.  Tr. 26 n.4.

The BIA specifically rejected several of Brinklys's contentions.  First, it rejected his assertion that the February 24, 2005, police report was unreliable because it recorded that Aurelija had stated both that she had known Kalinauskas since childhood and that they had been close friends for about eight years.  Tr. 25.  The BIA did not find those statements contradictory.  Id.  Further, it rejected Brinklys's assertion that Aurelija's poor English skills caused her to misspeak to law enforcement because there was no documentation of any such limitations in communication, either in the police report or through other evidence.  Id.  The BIA also rejected Brinklys's complaint that he was not provided with copies of police reports, the USCIS Memorandum on the marriage-fraud investigation, or property records.  Tr. 26.  It observed that 8 C.F.R. § 103.2(b)(16)(i) required USCIS to advise Brinklys of the derogatory information but did not require it to provide actual documents.  Tr. 26–27.

On October 6, 2014, Plaintiffs commenced the instant action by filing a complaint, see Complaint for Issuance of Writ of Mandamus (Doc. 1; "Complaint"), in which they sought a writ of mandamus compelling Defendants to properly adjudicate Sigitas Brinklys's I-130 Petition and Aurelija Caruso's I-485 Application (collectively, "the Petition") to enable Aurelija to reside lawfully in the United States, or alternatively, to review the decision of the BIA under the Administrative Procedure Act, 5 U.S.C. §§ 702, 706.  Id. ¶¶ 12, 37.  Defendants filed the Certified Administrative Record ("CAR") on the Court's public docket on April 3, 2015 (Doc. 16).  After Plaintiffs sought and obtained an

---

[6]     The USCIS Memorandum correctly reflected this information.  Tr. 882.

extension of the dispositive motion deadline, see Docs. 19 and 20, the parties filed cross motions for summary judgment on May 11, 2015. See Defendants' Motion for Summary Judgment (Doc. 21) and Plaintiffs' Motion for Summary Judgment and Supporting Memorandum of Law (Doc. 22). Again, after Plaintiffs sought and obtained an extension of time to respond, see Docs. 24 and 25, on June 25, 2015, the parties filed responses to the pending summary judgment motions, see Defendants' Opposition to Plaintiffs' Cross Motion for Summary Judgment (Doc. 26) and Plaintiffs' Response to Cross Motion for Summary Judgment (Doc. 27). On March 30, 2016, the Court entered an order granting summary judgment in favor of Defendants, see Summary Judgment Order, and the Eleventh Circuit Court of Appeals affirmed that decision on July 17, 2017, see Eleventh Circuit Opinion.

In the Motion, Plaintiffs contend that the Summary Judgment Order should be vacated under Rule 60(b) of the Federal Rules of Civil Procedure ("Rule(s)"). Plaintiffs' position is that they have discovered new evidence, as well as evidence Defendants wrongfully withheld from the CAR, that would have changed the Court's ruling in the Summary Judgment Order. See generally Motion. The new evidence consists of:

(1)　　A report from the Elgin Police Department dated January 19, 2005 relating to the investigation of Frank Caruso and Raimondas Kalinauskas for auto-part theft. See Aurelija Aff., Ex. 32: January 19, 2005 Elgin Police Department ("Investigation Report");

(2)　　A report from the Elgin Police Department dated February 24, 2005 relating to Kalinauskas's arrest for auto-part theft. Id., Ex. 33: February 24, 2005 Elgin Police Department ("February 24, 2005 Arrest Report"); and

(3)　　A report from the City of Park Ridge Police Department dated February 13, 2005 relating to Caruso's arrest for driving under the influence. Id., Ex. 30: July 25, 2015 FOIA Response ("DUI Report").

(collectively the DUI Report, Investigation Report and February 24, 2005 Arrest Report, will be referred to as the "Police Reports").  Additionally Plaintiffs assert that in December 2016 they discovered that numerous documents supporting their contentions had been withheld from the CAR.  See Motion at 5; Affidavit of Aurelija Caruso-Gotautiene (Doc.33-1; "Aurelija Aff.") ¶ 133.  Those documents consist of:

(1)    A July 11, 2005 Notice to Aurelija and Caruso scheduling their September 13, 2005 interview with USCIS.  Id., Ex. 1: Appointment Notice;

(2)    Nanette Gauido's letter dated August 3, 2005 recommending the Petition's approval.  Id., Ex. 3: August 3, 2005 Letter of Recommendation from Nanette Gaudio ("Gaudio Letter");

(3)    Bank One's documents pertaining to Aurelija and Caruso's joint bank account and credit cards.  Id., Ex. 2: Account Verification Request and Immigration Request Fax ("Account Verification");

(4)    Three letters from Plaintiffs and their attorney addressed to USCIS regarding the status of their Petition.  Id., Ex. 4: Status Inquiry Letters;

(5)    Five Letters written on Plaintiffs' behalf prior to their July 17, 2008 interview with USCIS.  Id., Ex. 5: Reference Letters;

(6)    Plaintiffs' form waiving counsel for their July 17, 2008 interview with USCIS. Id., Ex. 6: Attorney Waiver;

(7)    An Affidavit of Support filed on Plaintiffs' behalf on August 5, 2008.  Id., Ex. 7: Affidavit of Support;

(8)    Aurelija's July 24, 2009 statement providing USCIS with contact information for her parents, Caruso, and the Lithuanian Bureau of Vital Statistics.  Id. ¶ 54(h), Ex. 11: Information Statement; and

(9)    A letter from Plaintiffs' attorney dated March 24, 2011 requesting a meeting regarding the Petition.  Id., Ex. 13:  March 24, 2011 Letter.

See generally Motion.  Plaintiffs refer to this latter set of documents in their Motion collectively as the "Withheld Documents" and the Court will do so as well.  Relying on the Police Reports and the Withheld Documents, Plaintiffs assert that Defendants presented

the Court with a false narrative such that the Court should vacate its judgment because a review of the record, including the new evidence, shows that USCIS's findings were arbitrary, capricious, an abuse of discretion, and not supported by substantial evidence. See Motion at 2.

## II. Applicable Law

Rule 60(b) provides,

> [o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence could not have been discovered in time to move for a new trial . . .; (3) fraud . . ., misrepresentation, or misconduct of an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . .; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Rule 60(b).[7] Rule 60(b) empowers the district courts "'to vacate judgments whenever such action is appropriate to accomplish justice.'" Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984) (quoting Klapprott v. United States, 335 U.S. 601, 615, 69 S. Ct. 384, 390, 93 L. Ed. 266 (1949)). While the trial court is vested with substantial discretion in granting relief under Rule 60(b), see Abimbola v. Broward Cnty., 266 F. App'x 908, 910 (11th Cir. 2008) (quoting Am. Bankers Ins. Co. of Fla. v. Nw. Nat'l Ins. Co., 198 F.3d 1332, 1338 (11th Cir. 1999)), "[t]he desirability for order and predictability in the

---

[7] Under paragraph (c)(1) of Rule 60, "[a] motion under Rule 60(b) must be made within a reasonable time - and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Rule 60(c)(1). Plaintiffs filed the Motion on February 24, 2017, and therefore avoided their missing deadline for moving under Rules 60(b)(2) and (3) by only four days. Although technically timely, in light of the fact that Plaintiffs had all of the information necessary to raise their arguments in the Motion before the entry of the Summary Judgment Order, the Court questions whether Plaintiffs filed the Motion within a reasonable time. Nevertheless, the Court need not resolve this issue, as the Motion is due to be denied on other grounds.

judicial process speaks for caution in the reopening of judgments." <u>Griffin</u>, 722 F.2d at 680 (citation omitted). Accordingly, Rule 60(b) "seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.'" <u>Seven Elves, Inc. v. Eskenazi</u>, 635 F.2d 396, 401 (5th Cir. Unit A Jan. 26, 1981) (quoting <u>Bankers Mortg. Co. v. United States</u>, 423 F.2d 73, 77 (5th Cir. 1970)).[8] With this goal in mind, "it is often said that the rule should be liberally construed in order to do substantial justice." <u>Id.</u> Thus, "although the desideratum of finality is an important goal, the justice function of the courts demands that it must yield, in appropriate circumstances to the equities of the particular case in order that the judgment might reflect the true merits of the cause." <u>Id.</u> However, Rule 60(b) is not an appropriate vehicle "to relitigate the merits of claims or defenses, or to raise new claims or defenses that could have been asserted during the litigation of the case. Rather the aim of Rule 60(b) was to allow a district court to grant relief when its judgment rests upon a defective foundation." <u>Gonzalez v. Sec'y for Dep't of Corrs.</u>, 366 F.3d at 1253, 1291-92 (11th Cir. 2004) (J. Tjoflat, specifically concurring in part and dissenting in part), <u>aff'd on other grounds sub. nom.</u>, 545 U.S. 524, 125 S. Ct. 2641, 162 L. Ed.2s 480 (2005); <u>S.E.C. v. Lauer</u>, No. 03-80612-CIV-MARRA/HOPKINS, 2015 WL 11004892, at *4 (S.D. Fla. Nov. 24, 2015); <u>Arnold v. United States</u>, Nos. CV 312-063, CR 310-012, 2015 WL 127861, at *1 (S.D. Ga. Jan. 7, 2015); <u>Jackson v. Christensen</u>, No. 5:09-CV-274(MTT), 2012 WL 966633, at *3 (M.D. Ga. Mar. 21, 2012); <u>Talley v. Housing Auth. Of Columbus, Ga.</u>, No. 5:09-CV-308

---

[8] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

(CAR), 2014 WL 2117045, at *2 n.4 (M.D. Ga. May 21, 2014), aff'd 402 F. App'x 463 (11th Cir. 2010); Bush v. Raytheon Co., No. 8:07-cv-2087-T-24AEP, 2011 WL 1336386, at *3 (M.D. Fla. April 7, 2011).

## III. Analysis

### A. Newly Discovered Evidence

Plaintiffs argue that the Summary Judgment Order should be vacated under Rule 60(b)(2) based on their newly discovered evidence. See Motion at 22-24. To prevail, Plaintiffs must satisfy a five-part test:

> (1) The evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result.

Waddell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003) (citing Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1316 (11th Cir. 2000)). Notably, a "motion for a new trial under Rule 60(b)(2) is an extraordinary motion and the requirements of the rule must be strictly met." Id.

The Court finds that to the extent Plaintiffs seek relief under Rule 60(b)(2), the Motion is due to be denied because, plainly, the evidence is not new. Indeed, by Plaintiffs' own assertions it is evident that all of the Withheld Documents as well as the Police Reports have existed since before USCIS issued the NOID. Further the record unequivocally establishes that Plaintiffs, with due diligence, easily could have obtained both categories of "new" evidence long ago.

At the outset, the Court notes that Plaintiffs had all of the Withheld Documents in their custody since January 11, 2012, when USCIS sent them a CD ("FOIA CD") with a

redacted copy of the file related to their Petition.  <u>See</u> Motion at 5.  Although Plaintiffs

contend the FOIA CD was stolen in October of 2013, Aurelija's son had a copy.  <u>See</u>

Aurelija Aff. ¶¶ 131, 133.  Even had he not had a copy, Plaintiffs fail to suggest why they

could not simply make a second FOIA request, or that they made any effort to obtain a

copy of the FOIA CD before November 2016, seven months after the Court granted

Summary Judgment.  <u>See</u> <u>id.</u> (asserting that the FOIA CD had been stolen in 2013, and

that in November 2016 Aurelija contacted Plaintiffs' prior legal counsel to inquire if

counsel had a copy of the FOIA CD).  Notably, Defendants filed the CAR on April 3, 2015,

and a simple review of the CAR would have revealed that the documents Plaintiffs now

identify were not included.  For example, Plaintiffs complain that three letters they wrote

inquiring of the status of the Petition were withheld.  Surely Plaintiffs were aware of their

own letters and could recognize their absence from the CAR at any time between its April

2015 filing and the Court's March 30, 2016 entry of summary judgment.  If Plaintiffs

believed the Withheld Documents were material to the Court's decision, they could have

raised the issue with the Court or sought to obtain the records in a timely manner.  They

did neither.

Further, the record establishes that with due diligence Plaintiffs could have

obtained the Police Reports well before the Court entered the Summary Judgment Order.

As early as May 23, 2011, when USCIS issued its NOID, Plaintiffs knew that USCIS was

relying on the February 24, 2005 Arrest Report and also knew that USCIS questioned the

reason for Caruso's newly issued identification card.  <u>See</u> Tr. at 1.  Indeed in responding

to the NOID, Brinklys challenged the accuracy of the February 24, 2005 Arrest Report

and gave a reason for the newly issued identification card (that Caruso's license was

suspended for speeding). Plaintiffs did not, however, obtain the records supporting their contentions. Following the USCIS Decision, Brinklys again challenged USCIS's reliance on the February 24, 2005 Arrest Report. The BIA considered and referenced the February 24, 2005 Arrest Report in reviewing the USCIS Decision, and listed the Police Reports on the Privilege Log filed with the CAR on April 3, 2015. <u>See</u> Privilege Log – Certified Administrative Record (Doc. 16-1; "Privilege Log"). Despite knowledge since 2011, that the contents of the February 24, 2005 Arrest Report were highly disputed, and knowing that a question existed as to the suspension of Caruso's license, the Aurelija Aff. shows that Plaintiffs made no real effort to obtain the Arrest Reports until May 2015. <u>See</u> Aurelja Aff. ¶ 100. Moreover, although Plaintiffs contend that they "requested" the Arrest Reports in May 2015, it appears that they waited until July 2016, after the entry of Summary Judgment, to send any FOIA requests seeking to obtain the documents. Aurelija's description of their efforts, along with the FOIA requests and responses, show that Plaintiffs began sending FOIA requests on July 13, 2016, and within a month, by August 16, 2016, had received all of the Arrest Reports. <u>Id.</u> ¶¶ 100-110; Exs. 24-33. With the most minimal amount of diligence, Plaintiffs easily could have obtained all of the Arrest Reports at any time after the May 23, 2011 NOID.[9] Thus, none of the evidence proffered by Plaintiffs is new, and none of it is evidence that with minimal diligence Plaintiffs could not have discovered before entry of summary judgment.

Notably, even if the evidence were newly discovered, Plaintiffs have failed to show that it would have changed the Court's ruling. On summary judgment, the Court

---

[9]     The suggestion that Plaintiffs did not know where the records were held or how to find them is belied by the ease with which they obtained the documents once they made proper FOIA requests.

determined that the BIA and USCIS did not act arbitrarily or capriciously in concluding that substantial and probative evidence demonstrated that Aurelija and Caruso fraudulently married. Plaintiffs' evidence does nothing to detract from or undermine the Court's conclusion. By way of example, Plaintiffs argue that Defendants falsely claimed "there was no evidence that Caruso's license had been suspended." <u>See</u> Motion at 12. In truth USCIS stated that Brinklys failed to present "evidence of when and if the driver's license [Caruso] had prior to this new one was even actually suspended." Tr. 15. However, they fail to recognize that the fact that Caruso's driver's license was suspended in February 2005, seven months before the interview, does nothing to explain why he obtained an identification card just three days before the interview.

With respect to the February 24, 2005 Arrest Report, Plaintiffs repeat and rehash all of the arguments they have made throughout this lengthy process. Additionally they argue that USCIS cherry picked information from the documents and ignored favorable information. However, they point to no statement by USCIS that is demonstrably false and the full document itself was in the record for consideration by the BIA. Indeed, having reviewed the February 24, 2005 Arrest Report provided by Plaintiffs, the Court rejects the contention that USCIS's references to it were either false or misleading. Plaintiffs simply continue to disagree with the conclusions USCIS and the BIA drew from the information in the document, but that is not a basis for setting aside the Summary Judgment Order. <u>See</u> <u>Am. Ass'n of People with Disabilities v. Hood</u>, 278 F. Supp. 2d 1337, 1340 (M.D. Fla. 2003) ("[A] motion for reconsideration does not provide an opportunity to simply reargue an issue the Court has once determined.").

Plaintiffs also argue that the Withheld Documents make a difference. For example they assert that the affidavits of relatives rebut the false contention that USCIS had no way to contact Aurelija's neighbors because their names and addresses are plainly on the notarized affidavits. <u>See</u> Motion at 12. But USCIS did not state that it had no way of contacting these people. It noted that the letters attached no identity documents and provided insufficient information to make them reliable. Tr. 4-15. These conclusions are reasonable.

To the extent that any of the other evidence sheds light on the circumstances surrounding Aurelija and Caruso's marriage, it is cumulative of evidence already in the CAR, <u>see</u> Response, Ex A: Declaration of Tracy McCormick ("McCormick Decl.") ¶ 11(c), and in the Court's view immaterial to the Court's findings in light of the overwhelming evidence demonstrating fraud. Indeed, the CAR contains ample evidence to support the BIA's conclusion, including property records showing that Aurelija and Kalinauskas purchased and refinanced real property together, as husband and wife, and as joint tentants, the lease agreement showing that Aurelija and Caruso did not live together, and statements from Caruso's mother. <u>See generally</u> Tr. Accordingly, to the extent that Plaintiffs seek to vacate the Summary Judgment Order under Rule 60(b)(2), the Motion is due to be denied.

**B. Misconduct, Misrepresentation, Fraud**

Plaintiffs also argue that the Summary Judgment Order should be vacated under Rule 60(b)(3). <u>See</u> Motion at 25-26. Rule 60(b)(3) allows a court to set aside a final judgment if the moving party demonstrates "by clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other

misconduct." See Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1287 (11th Cir. 2000) (citing Scutieri v. Paige, 808 F.2d 785, 794 (11th Cir. 1987); Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978)). To obtain such relief, the moving party must demonstrate that the challenged conduct "prevented the losing party from fully and fairly presenting his case or defense." Frederick, 205 F.3d at 1287 (citing Scutieri, 808 F.2d at 794; Rozier, 573 F.2d at 1339). Indeed, Rule 60(b)(3) provides relief from judgments that have been "unfairly obtained, not those which may be factually incorrect." Rozier, 573 F.2d at 1339. Therefore, on a Rule 60(b)(3) motion, the Court looks to the alleged fraudulent or improper conduct, not whether the information might have changed the outcome of the case. See id.

Plaintiffs contend that Defendants engaged in misconduct and committed a fraud upon the Court by withholding their "newly discovered" evidence, misrepresenting the February 24, 2005 Arrest Report, and "cherry picking" evidence to support a pre-determined conclusion. See Motion at 1-2, 25-26.[10] However, evidence that Plaintiffs had in their possession or was available to them prior to the Court's entry of the Summary Judgment Order cannot serve as the basis for relief under Rule 60(b)(3). See Brown v. Press Repair Eng'g Sales & Serv., Inc., No. 8:07-cv-931-T-27MAP, 2008 WL 2433504, at *2 (M.D. Fla. Jun. 16, 2008) ("Plaintiff has not shown that any conduct by Defendants prevented him from fully and fairly presenting his case, as the evidence on which Plaintiff

---

[10]     In the Motion Plaintiffs also raise arguments based on evidence that they do not even claim is new. Plaintiffs question the accuracy of the property records and include articles criticizing reliance on Choicepoint reports. See Motion at 14 n.16; Aurelija Aff. ¶ 134. They even attach the articles as an exhibit to the Aurelija Aff. See Aurelija Aff., Ex. 38. But nowhere do they suggest that the articles are new. Notably the articles are dated January 20, 2005, March 8, 2005, and March 23, 2005, and as such existed and were readily available to Plaintiffs since 2005. The inclusion of these materials and argument suggests the Motion is nothing more than an attempt to re-argue the merits of a claim decided long ago.

relies was in Plaintiff's possession or available to Plaintiff before the Court entered its order of dismissal."). Further, as previously discussed, although Plaintiffs did not actually possess the Police Reports until 2016, there is no reason they could not have obtained them with due diligence. "A party cannot successfully bring a Rule 60(b)(3) motion where the 'pursuit of the truth was [not] hampered by anything except [the movant's] own reluctance to undertake an assiduous investigation.'" Armstrong v. The Cadle Co., 239 F.R.D. 688, 695 (S.D. Fla. 2007) (internal citation omitted) (alterations in original)). Even assuming, arguendo, that Defendants had cherry picked the evidence to support a pre-determined conclusion, Plaintiffs cannot show that Defendants prevented them from obtaining the evidence to raise this argument on summary judgment. See Diaz v. Methodist Hosp., 46 F.3d 492, 497 (5th Cir. 1995) ("When a party is capable of fully and fairly presenting her case notwithstanding 'fraud, misrepresentation, or other misconduct,' the trial court does not err when it denies a Rule 60(b)(3) motion."). Plaintiffs' arguments demonstrate a misunderstanding of the purpose of Rule 60(b)(3), which is not to correct outcomes that may be factually incorrect, but to rectify those that were unfairly obtained. See id. Thus, to the extent that Plaintiffs seek relief under Rule 60(b)(3), the Motion is due to be denied.

### C. Additional Grounds for Relief

Additionally, Plaintiffs seek relief under Rule 60(b)(5), which "permits a party to obtain relief from a judgment or order if, among other things, 'applying [the judgment or order] prospectively is no longer equitable.'" Horne v. Flores, 557 U.S. 433, 447, 129 S. Ct. 2579, 2593, 174 L. Ed.2d 406 (2009) (quoting Fed. R. Civ. P. 60(b)(5)). "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order

rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" Id. (quoting Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 384, 112 S. Ct. 748, 753, 116 L. Ed.2d 867 (1992)); see also Hodge v. Dep't of Housing and Urban Dev., 862 F.2d 859, 861-62 (11th Cir. 1989) (Congress has codified in Rule 60(b)(5) the judicial formulation of a court's inherent power to modify an injunction in adaptation to changed conditions). Alternatively, Plaintiffs seek relief under Rule 60(b)(6), which "authorizes relief for 'any other reason justifying relief from the operation of the judgment.'" Cano v. Baker, 435 F.3d 1337, 1342 (11th Cir. 2006) (quoting Fed. R. Civ. P. 60(b)(6)). "Rule 60(b)(6) motions must demonstrate 'that the circumstances are sufficiently extraordinary to warrant relief.'" Id. (citation omitted). Plaintiffs have failed to establish that the factual conditions or laws have changed since the entry of the Summary Judgment Order, or that extraordinary circumstances justify vacating the Summary Judgment Order. Because the Court has determined that Plaintiffs' proffered evidence is not new and is immaterial to the BIA's decision in light of the overwhelming evidence supporting the BIA's conclusion, to the extent that Plaintiffs seek relief under Rules 60(b)(5) and (6), the Motion is due to be denied.

Additionally, the Court notes that to the extent Plaintiffs seek a de novo review of the Summary Judgment Order and the entry of an order directing Defendants to "produce a full, complete, and accurate record of the administrative proceedings" and "turn over all copies of any redacted or withheld documents," see Motion at 30, the Motion is due to be

denied. Because Plaintiffs have failed to establish that vacating the Summary Judgment Order is warranted, a de novo review would be inappropriate.

## IV. Conclusion

In light of the foregoing, the Motion is due to be denied in its entirety. Accordingly, it is hereby

**ORDERED:**

1. Plaintiff's Verified Motion for Leave to File a Reply to Government's Response to Motion to Vacate and Incorporated Request to Submit a Reply Brief of No More than Six (6) Pages [sic] (Doc. 42) is **DENIED**.

2. Plaintiffs' Motion to Vacate Judgment (Doc. 33) is **DENIED.**

**DONE AND ORDERED** in Jacksonville, Florida, on August 16, 2017.

MARCIA MORALES HOWARD
United States District Judge

lc25
Copies to counsel of record